Gabrielli, J.
Presented for our determination is the issue whether, under the governing long-arm jurisdiction statute (CPLR 302, subd [a], par 2), a showing that a New York bank is the correspondent of an out-of-State bank provides a sufficient basis upon which New York courts may exercise jurisdiction over the out-of-State bank.
CPLR 302 vests the courts of this State with "personal jurisdiction over any nondomicilary * * * who in person or through an agent: 1. transacts any business within the state” as to any cause of action arising from such transaction. Its purpose, of course, is to extend the basis of jurisdiction over nonresidents beyond the traditional physical presence requirements (for a short history of its development see Longines- *394 Wittnauer Watch Co. v Barnes & Reinecke, 15 NY2d 443, 450-452).
Plaintiff-appellant Amigo Foods Corporation, a New York wholesaler, contracted to buy several truckloads of potatoes from defendant-appellant E. H. Parent, Inc. (Parent), a Maine potato grower and distributor; payment was to be made by letter of credit at or through defendant Aroostook Trust Company, a Maine bank. Plaintiff obtained a letter of credit in New York from defendant Marine Midland Bank which subsequently delivered the letter to Aroostook’s New York correspondent, defendant Irving Trust Company.
Precisely what occurred thereafter is disputed by the parties. The complaint alleges that (1) either Parent refused to accept payment and thus breached the contract or (2) that the defendant banks wrongfully failed to deliver and pay Parent in accordance with the terms of the letter of credit. Parent answered that it never received payment and cross-claimed against the banks. The banks, in turn, deny that they were at fault.
Regarding the interrelationship of the banks, the complaint sets forth that payment pursuant to the letter of credit was, at the request of either Marine or Aroostook, "to be made by and through defendant Irving, as agent for defendant Marine, defendant Aroostook, or both such defendants” (emphasis added). Similarly, the answer and cross claim of Parent alleges that Aroostook "engaged Irving * * * as its [correspondent] bank or agent in New York City in connection with the said agreements” (emphasis added). In its pleading, Marine alleged that Irving "was and is the correspondent of Aroostook”. Although Irving denied that it was the agent of Aroostook, significantly it did not dispute the allegation that it was Aroostook’s correspondent in New York.
Aroostook did not answer the claims made against it, but rather, moved to dismiss for want of personal jurisdiction. In its supporting affidavit, Aroostook stated that "[b]eyond the notification to its depositor of the arrival of the Letter of Credit and the notification to Irving Trust Company, who had forwarded the Letter of Credit that the Parents were rejecting the Letters of Credit, [it] took no action, and had none to take”. Thus, Aroostook asserts that it did no act in New York out of which the cause of action arose. The affidavit submitted by plaintiff in opposition alleges that Aroostook and Irving were agents; or, alternatively, that their relationship is uncer *395 tain and that, minimally, leave to conduct depositions on the jurisdictional issue should be granted. Neither Irving nor Marine appeared on the motion.
Concluding that the papers submitted did not affirmatively establish whether Irving was acting as an agent for Aroostook, Special Term withheld determination of the motion and referred the matter to a special referee for discovery and deposition proceedings on the jurisdictional issue.* A majority of the Appellate Division reversed and granted the motion to dismiss the complaint holding that a correspondent bank relationship was an insufficient basis upon which to predicate long-arm jurisdiction. Two Justices dissented on the opinion at Special Term.
We reverse and hold that discovery should be permitted on the jurisdictional issue. If a party demonstrates that facts may exist in opposition to a motion to dismiss, discovery is sanctioned (Peterson v Spartan Ind.., 33 NY2d 463, 467; cf. CPLR 3211, subd [d]). In Peterson, we held that where "the plaintiffs have made a sufficient start, and shown their position not to be frivolous * * * [t]hey should have further opportunity to prove other contacts and activities of the defendant in New York as might confer jurisdiction under the long-arm statute, thus enabling them to oppose the motion to dismiss” (p 467). Precisely the same situation is present here. Appellants have alleged that an agency relationship exists between Aroostook and Irving and, from the pleadings and affidavits, it is obvious that their position is not frivolous. Thus, they should have the further opportunity to prove that New York has jurisdiction over Aroostook.
Appellants argue, however, that the undisputed fact that Irving is the New York correspondent for Aroostook is sufficient, in and of itself, to resolve the jurisdictional issue in their favor. We cannot agree. Bank of Amer. v Whitney Bank (261 US 171), the predicate for appellants’ position, was decided in 1923 long before the development of long-arm jurisdiction concepts and is inapposite.
Respondent and the majority below, on the other hand, rely on Scanlon v First Nat. Bank (249 NY 9, 13) and Asbury Park & Ocean Grove Bank v National City Bank (35 NYS2d 985, affd 268 App Div 984) as support for the position that corre *396 spondent banks are, at best, independent contractors with respect to each other and, thus, that their relationship cannot serve as a jurisdictional basis. However, apart from the question whether a nonagency relationship can form a long-arm jurisdictional foundation (see McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 302:3, pp 65-68, and 1975-1976 Supp, pp 13-14, 17-18), the cited cases are not in point for neither addresses the relationship between banks inter se in the handling of letters of credit.
In sum, we conclude that, standing by itself, a correspondent bank relationship, without any other indicia or evidence to explain its essence, may not form the basis for long-arm jurisdiction under CPLR 302 (subd [a], par 1).
Discovery is desirable in this case because the critical facts are as yet obscure or in dispute. Of telling significance and necessary for decision, is the scope of Aroostook’s involvement, if any, in activities here. Disclosure proceedings will permit appellants to show whether Aroostook purposely availed itself of the privilege of conducting activities in New York thereby invoking the benefits and protections of its laws (see Hanson v Denckla, 357 US 235, 253) and, particularly, the precise nature of its relationship with Irving Trust vis-á-vis the handling of letters of credit.
We find no merit in the additional argument that a breach of a contract constitutes a tortious act and may form a basis for long-arm jurisdiction under CPLR 302 (subd [a], pars 2, 3).
Accordingly, the order of the Appellate Division should be reversed, with costs to abide the event, and the matter remitted to the Supreme Court for further proceedings in accordance with the opinion herein.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
Order reversed and case remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein, with costs to abide the event.

 Special Term also permitted discovery with respect to the claim that jurisdiction lies under CPLR 302 (subd [a], par 3).